UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAYLOR CUMINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-04406-TWP-MPB |
| | ) |
| CITY OF MUNCIE, and RYAN MCCORKLE, | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants City of Muncie ("Muncie") and Ryan McCorkle ("Officer McCorkle") (collectively, "Defendants") ([Filing No. 39](#)). Plaintiff Taylor Cumings ("Ms. Cumings") filed this lawsuit for civil rights violations following her arrest for neglect of a dependent. Following discovery, the Defendants filed a Motion for Summary Judgment on Ms. Cumings' claims, arguing that probable cause existed to support her arrest, so her claims fail as a matter of law. For the following reasons, the Court **grants** the Defendants' Motion.

### I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Ms. Cumings as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Ms. Cumings is an adult citizen who resides in Delaware County, Indiana. She is a single mother of two boys. Her sons were ages seven and four at the time of the events giving rise to this case. Muncie is a government unit located in Delaware County, Indiana. It operates the Muncie

(Indiana) Police Department. Officer McCorkle is an adult citizen who resides in Delaware County, Indiana, and is employed as a law enforcement officer for the Muncie Police Department (Filing No. 1 at 2–3; Filing No. 11 at 2–3, ¶¶ 7, 8, 15).

In 2018, Ms. Cumings worked as a youth support specialist at the Youth Opportunity Center (the "YOC"), a residential facility for troubled youth in Muncie. The YOC was approximately fifteen to twenty minutes from Ms. Cumings' home. She was scheduled to work her regular shift on December 18, 2018, but the day before, her four-year-old son had a fever of 100º. His school required him to stay home for twenty-four hours after the fever ended. By December 18, 2018, Cummings' four-year-old son felt fine, but he was not yet able to attend school. Her seven-year-old son was not sick. Although the YOC gave its employees a generous amount of time off, Ms. Cumings had already exhausted the amount of time she could take off without advance notice. She was worried that if she called in to take the day off, without giving YOC advance notice, she would be fired (Filing No. 46-1 at 5–8, 24).

Knowing that her youngest son was unable to attend school on December 18, 2018, Ms. Cumings called everyone she could think of the day before in an effort to find a babysitter. Her Aunt Amanda as well as her son's grandmother could not babysit. Because she could not find a baby sitter and could not lose her job, Ms. Cumings decided to have to leave her children at home alone. She confided in Aunt Amanda and others that she was going to have to leave the children at home because she could not get a babysitter, and none of them expressed any concern that this was dangerous. Ms. Cumings believed that they were not concerned because they knew her children and recognized that they were smart and mature for their age. Ms. Cumings had left the boys alone once before, and nothing had gone awry. *Id.* at 13–16.

On the morning of December 18, 2018, Ms. Cumings explained to her sons that she could not find a babysitter and she could not miss work. She explained to her seven-year-old son that he would have stay home from school to be in charge of his younger brother (the four-year-old). She told him to prepare food for them if they got hungry. She left her cell phone with them, and she instructed her older son to call 911 in an emergency but that his first contact should be with her. They also could call Aunt Amanda. She instructed them not to answer the door if anyone knocked but to call her or Aunt Amanda. She told them that she would return home after lunch.

Ms. Cumings left her house to go to work around 6:40 a.m. She called from work at least every hour to check on the boys. *Id.* at 8–9, 15–16. Later that afternoon, a coworker informed Ms. Cumings that the police were on the telephone. She accepted the call and was instructed by a dispatch officer to return home. She asked what was happening, but they refused to tell her. Ms. Cumings was too hysterical to drive herself and asked a coworker to drive her home, which they did. *Id.* at 9.

Shortly after 12:30 p.m., a concerned neighbor had called the Delaware County Emergency Communications, stating that a seven-year-old child was left home to take care of a sick four-year-old child. At that point, Ms. Cumings' children had been home alone for approximately six hours. Officer McCorkle was dispatched to Ms. Cumings' house in Muncie on the report from the anonymous citizen that the boys were home alone. When Officer McCorkle arrived at the house, the children refused to open the door to him, one of them looked out the window, and the older son called their aunt and told her the police were at the door. Aunt Amanda arrived at the house, and the children opened the door for her. Officer McCorkle did a welfare check on the children and a sweep of the house; the children appeared nervous, the younger child was coughing, and the older child appeared to be healthy. He observed that the children had access to food, water, and

toys. There did not appear to be anything dangerous in the house other than normal household items such as kitchen utensils. He observed that no adults were inside the home with the children. Officer McCorkle had dispatch contact Ms. Cumings, who eventually arrived at the house. Officer McCorkle described Ms. Cumings as nervous and scared but cooperative (Filing No. 1 at 3; Filing No. 11 at 3, ¶ 15; Filing No. 46-2 at 6–7, 9; Filing No. 46-1 at 8; Filing No. 41-2 at 2).

The interactions and conversations among Officer McCorkle, Ms. Cumings, the two children, Aunt Amanda, and the grandmother who had arrived at the home before Ms. Cumings arrived were recorded on Officer McCorkle's body camera video. The body camera video recording shows that, once Aunt Amanda arrived and convinced the children to open the door for her, Officer McCorkle and Aunt Amanda entered the home. Soon after entering the home, Aunt Amanda asked the older child why he was not at school and then asked, "Your mom left you here to take care of your brother?" (Filing No. 43, Manually-filed Video at 12:49–12:59.) While Officer McCorkle was doing a sweep of the home, he asked police dispatch to have somebody from the Department of Child Services ("DCS") call him on his cell phone. *Id.* at 13:35. The grandmother arrived while Officer McCorkle was doing a sweep of the home. When she entered the house, she asked the children if they were home by themselves and how long they had been alone. *Id.* at 15:43. The grandmother also said "if they take her, bring the kids… to me". (Filing No. 41-1 at 12). And then she left. *Id*.

While Officer McCorkle was on a phone call with someone at DCS, Ms. Cumings arrived home. She found Officer McCorkle in a bedroom on the phone. He directed her out of the room, and then he told the person at DCS that Ms. Cumings likely would be going with the police, so DCS needed to send somebody out to the home. *Id.* at 19:45. Officer McCorkle ended the phone

4

call and then went to the front porch of the home where he, another police officer, and Ms. Cumings began having a conversation.

While talking on the front porch, Ms. Cumings explained that she could not find a babysitter and could not call off work and that she left her phone with the children. She explained that her youngest son had a fever the day before but did not have a fever at that time. She then explained, "This is not something I wanted to do." *Id.* at 22:30. Ms. Cumings explained to Officer McCorkle and the other police officer that she had called her children "every twenty to thirty minutes, which doesn't make it any better." *Id.* at 22:49–22:55. And she acknowledged, "I know this is not okay." *Id.* at 23:01–23:04. As Ms. Cumings explained her decision-making process to the officers, she noted, "Do I lose my job? Or now I'm in jeopardy of losing my kids." *Id.* at 23:07–23:10. As the police officers explained to Ms. Cumings that this was not acceptable, she conceded, "I know." *Id.* at 23:12–23:27. The other police officer then said to Ms. Cumings that, "if the house catches on fire, the children would not know what to do"; Ms. Cumings responded, "I know," and then said, "don't think these scenarios don't go through my head because they do." *Id.* at 25:49–26:00. As they continued to talk, Ms. Cumings again stated, "I know this is not okay." *Id.* at 26:14.

Officer McCorkle determined there was probable cause to arrest Ms. Cumings for neglect of a dependent in violation of Indiana Code § 35-46-1-4(a). He made that determination based on the fact that when he arrived at Ms. Cumings' home, he found her seven-year-old and four-year-old children home alone. They would not speak with him, there were no adults in the house, and the seven-year-old child had been left to watch the four-year-old child. Ms. Cumings stated to Officer McCorkle that she knew it was not right to leave the children home alone. Officer McCorkle did not believe that the children would know what to do in the event of an emergency

5

such as a fire. And the children had refused to answer the door for him, so he was concerned that they would do the same for a fireman in the event of a fire. The relatives who arrived at the scene did not appear to Officer McCorkle to know the children had been left home alone. Officer McCorkle believed that a seven-year-old child would not be able to give medication to a sick four-year-old child or call a doctor. He also believed the younger child could not assist the older child if the older child had an accident and got injured. Additionally, Ms. Cumings admitted to Officer McCorkle that she had left the children home alone on at least one previous occasion. Based on these circumstances, Officer McCorkle determined that probable cause existed, and he arrested Ms. Cumings for neglect of a dependent ([Filing No. 41-2 at 2](); [Filing No. 46-2 at 8]()–10).

Officer McCorkle transported her to the Delaware County Jail. Ms. Cumings was held at the jail for approximately a day and a half. The Delaware County Prosecutor declined to file criminal charges against Ms. Cumings ([Filing No. 46-1 at 10](), 12; [Filing No. 46-2 at 10](), 12).

On October 30, 2019, Ms. Cumings brought this action pursuant to 42 U.S.C. § 1983 for violation of her rights under the Fourth and Fourteenth Amendments, alleging that Officer McCorkle falsely arrested her in violation of federal and Indiana law. ([Filing No. 1]().)

She alleges, "At all relevant times [Officer McCorkle] acted within the scope of his employment by the City of Muncie and under color of Indiana law." *Id.* at 3. She further alleges, "The City of Muncie is liable under the principal [sic] of *respondeat superior* for the acts and omissions of McCorckle [sic]." *Id.* at 4. On November 13, 2020, Defendants filed their Motion for Summary Judgment, arguing that the claims must be dismissed because probable cause supported Ms. Cumings' arrest ([Filing No. 39]()).

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion

for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

On October 28, 2020, Ms. Cumings filed a Statement of Claims, explaining, "Ms. Cumings brings a claim of false arrest, in violation of her rights under the Fourth Amendment, against Officer McCorkle in his individual capacity pursuant to 42 U.S.C. 1983." ([Filing No. 35 at 2](#).) Additionally, "Ms. Cumings brings a claim of false arrest under Indiana law against the City of Muncie, under the principle of *respondeat superior*, as Officer McCorckle [sic] at all relevant times acted within the scope of his employment by the City of Muncie." *Id.* The Defendants ask the Court to enter summary judgment on Ms. Cumings' claims because probable cause supported her arrest, which defeats her false arrest claims, and where no underlying wrong occurred, the *respondeat superior* claim against Muncie also fails.

A claim against a police officer for a Fourth Amendment violation requires proof of a "seizure" that was "unreasonable". *Belcher v. Norton*, 497 F.3d 742, 747 (7th Cir. 2007). To support the claim, the seizure must be found to be unreasonable through "'careful attention to the facts and circumstances of each particular case.'" *Donovan v. City of Milwaukee*, 17 F.3d 944, 949 (7th Cir. 1994) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Importantly, "the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989); *see also Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (the existence of probable cause is an absolute defense against a claim of false arrest). Therefore, in order to prevail on a claim for false arrest or unreasonable seizure under Section 1983, a plaintiff must show that there was no probable cause for the arrest, and the police officer acted unreasonably.

> "Probable cause for an arrest exists if the totality of the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, [to] believe, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *U.S. v. Paige*, 870 F.3d 693, 699-700 (7th Cir. 2017) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979)) (brackets and ellipsis original). "Determination of probable cause and reasonable suspicion are normally mixed questions of fact and law, but when 'what happened?' is not at issue, the ultimate resolution of whether probable cause or reasonable suspicion existed is a question of law which we review de novo." *U.S. v. Carlisle*, 614 F.3d 750, 754 (7th Cir. 2010) (internal citation omitted). Contrary to what its name might seem to suggest, probable cause "demands even less than 'probability,'" *United States v. Moore*, 215 F.3d 681, 685 (7th Cir. 2000) (quoting *United States v. Burrell*, 963 F.2d 976, 986 (7th Cir. 1992); it "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Id.*

*Hostetler v. City of Southport*, 2019 U.S. Dist. LEXIS 29277, at *23 (S.D. Ind. Feb. 25, 2019).

A finding of probable cause "requires something more than a hunch," but it "does not require a finding that it was more likely than not that the arrestee was engaged in criminal activity." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013). It is considered from an objective standpoint, and "the officer's belief that the arrestee was committing a crime need only be reasonable." *Id.* Courts look to the totality of the facts and circumstances known to the officer at the time of the arrest, not with 20/20 hindsight, to determine whether the officer had probable cause to make an arrest. *Id.* "The fact that [the plaintiff] was not actually convicted . . . does not mean that there was not probable cause for her arrest." *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998).

Officer McCorkle arrested Ms. Cumings for neglect of a dependent—a violation of Indiana Code § 35-46-1-4(a). That statute reads,

> (a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:
>
>> (1) places the dependent in a situation that endangers the dependent's life or health;

> (2) abandons or cruelly confines the dependent;
> (3) deprives the dependent of necessary support; or
> (4) deprives the dependent of education as required by law;
>
> commits neglect of a dependent, a Level 6 felony.

Ind. Code § 35-46-1-4.

The Defendants point out that Indiana courts have narrowed the interpretation of the statute, holding that "a 'knowing' mens rea requires a subjective awareness of a 'high probability' that a dependent has been placed in a dangerous situation." *Villagrana v. State*, 954 N.E.2d 466, 468 (Ind. Ct. App. 2011). Moreover, no bodily injury or physical harm must befall a child for a finding of neglect of a dependent as is evident from the statute itself where Indiana Code § 35-46-1-4(b) raises the offense to a Level 5 felony if there is bodily injury, showing clearly that bodily injury is not required for arrest and conviction under Subsection 4(a).

Under the language of Indiana Code § 35-46-1-4(a)(1) and in light of the undisputed facts, Defendants argue it was objectively reasonable for Officer McCorkle to determine that probable cause existed to arrest Ms. Cumings for neglect of a dependent. Officer McCorkle arrived at Ms. Cumings' home and discovered a seven-year-old watching his four-year-old brother who was recovering from a fever with no adults in sight. It was objectively reasonable for him to determine that Ms. Cumings placed her dependents in a situation that endangered their life or health.

Defendants point out that Ms. Cumings intentionally her young children home alone for approximately six hours, and she was approximately fifteen minutes away. As their mother, Ms. Cumings had experience watching children. She should have had a subjective knowledge that leaving them alone placed them in danger. Ms. Cumings admitted to Officer McCorkle that one of the children was recovering from an illness, that they may not know what to do in the event of an emergency such as a fire, and that she knew it was not right to leave them alone. The relatives who

10

arrived at the house appeared to Officer McCorkle to not know that the children had been left alone. Ms. Cumings also admitted to Officer McCorkle that she had done this once before. The Defendants argue that this is more than enough to support Officer McCorkle's conclusion that probable cause existed to arrest Ms. Cumings for neglect of a dependent.

In response, Ms. Cumings asserts that Indiana courts have interpreted the neglect-of-a-dependent statute as applying only to situations that expose a dependent to an "actual and appreciable danger to life or health." *Gross v. State*, 817 N.E.2d 306, 309 (Ind. Ct. App. 2004). She argues that, when Officer McCorkle entered her home, he observed no actual or appreciable danger to the children's life or health. They had food, water, and toys. They appeared healthy. There was nothing dangerous in the house. He also knew from Ms. Cumings that she had left her phone with the children and had called them regularly to check on them. While Officer McCorkle was concerned the children might not be able to call 911, he knew that they had called their aunt when he knocked on the door. Moreover, the DCS assessor who came to Ms. Cumings' home testified that the children appeared to be safe and healthy and that there was food in the home that was accessible to them. The DCS assessor did not observe any imminent danger ([Filing No. 46-3 at 6](Filing No. 46-3 at 6)–7). Ms. Cumings argues that her aunt did know that she was leaving the children home alone because Ms. Cumings had asked for her help babysitting and then told her that the children would be alone the next day. The people in whom Ms. Cumings confided that the children would be home alone did not raise concerns with her. And she had left them home alone once before, and nothing bad had occurred. Ms. Cumings argues that nothing Officer McCorkle learned on the scene would have led a reasonable officer to believe that Ms. Cumings had a subjective awareness that there was a high probability that she had placed her dependents in a dangerous situation.

11

Ms. Cumings does not dispute that she told the police officers, "I know this is not okay," but she argues this is not an admission that she believed she had placed her sons in a dangerous situation. Rather, taken in context, the statement was simply an acknowledgment that she did not want to leave the boys alone, and it would have been far preferable to have found a babysitter or someone to cover for her at work.

Ms. Cumings further argues that a "conviction cannot be based on speculation. . . . Imagination or speculation is not a proper basis for presenting evidence nor for analyzing it or reaching conclusions based on it." *Gross*, 817 N.E.2d at 311. Ms. Cumings contends that all the dangers to which Officer McCorkle claims she exposed her children are speculative rather than actual. In his list of possible imminent dangers that could occur when a 7-year-old is left in the sole supervision of a sick 4-year old in a home, Officer McCorkle lists fires, electrical malfunctions, gas leaks, natural disasters, home invasion, injuries related to furniture or fixtures, consumption of pills or poisonous substances in the home, injury to children requiring immediate medical help, sudden illness, or worsening of illness. ([Filing No. 41-4 at 6](#)). Ms. Cumings argues there was no evidence that these problems were likely to befall her children, and thus, they are not a basis for a charge of neglect of a dependent.

The Defendants reply that Indiana law does not require harm to come to a child prior to an arrest for neglect; a child need not be on the brink of injury before an arrest can be made. The available evidence does not have to rise to the level to support a conviction in order for probable cause for arrest to exist. In addition, Ms. Cumings inappropriately tries to interject facts not known to Officer McCorkle at the time of arrest as reason for why her arrest was improper. At the time of her arrest, Ms. Cumings admitted to Officer McCorkle that she knew it was not right or okay to leave her children home alone, and it was reasonable for Officer McCorkle to interpret that

statement, at that time, to mean that Ms. Cumings knew she was placing her children in danger. As to whether Aunt Amanda knew the children were home alone, Officer McCorkle heard Aunt Amanda ask, at that time, why they were not at school and why Ms. Cumings left the older brother to take care of the younger brother. The Defendants argue it was reasonable for Officer McCorkle to conclude the relatives did not know the children were home alone based on Aunt Amanda's questions to the children.

Officer McCorkle concluded that the children were not old enough to care for themselves should any emergency arise. The Defendants argue that Ms. Cumings acts as if Officer McCorkle's concerns about these matters were trivial or ridiculous. However, these are real concerns for a reasonable police officer; they are not farfetched fantasies. The Defendants point out that emergencies are often problems precisely because they are surprising and unpredictable events. Thus, Officer McCorkle reasonably believed Ms. Cumings' children to be in "actual and appreciable" danger and decided there was probable cause for Ms. Cumings' arrest. ([Filing No. 49 at 4](#).) They conclude, "There was actual probable cause to arrest the Plaintiff on December 18, 201[8]. The Plaintiff argues otherwise, but in doing so, she sets the bar for probable cause at the same level as conviction. She also analyzes the evidence in hindsight. These are not the applicable standards." ([Filing No. 49 at 6](#).)

The designated evidence, including the video recording of the events on December 18, 2018, shows the Defendants' position is well-taken. The Court has considered the legal elements of Indiana Code § 35-46-1-4(a), neglect of a dependent, and has compared those elements to the facts known to Officer McCorkle at the time of the arrest. It was reasonable for Officer McCorkle to conclude that Ms. Cumings had placed her seven-year-old and four-year-old children in a

situation with actual and appreciable danger, and she had a subjective awareness of the high probability of danger.

In response to a call concerning young children left home alone, Officer McCorkle arrived at the house and discovered a seven-year-old watching his four-year-old brother who was recovering from being sick, and there were no adults with them. Ms. Cumings had left them alone for approximately six hours, and she was approximately fifteen to twenty minutes away at work. She intentionally left her children home alone. Ms. Cumings admitted to Officer McCorkle that one of the children was recovering from an illness. She acknowledged to the police officers that her children may not know what to do in the event of a fire. Despite Ms. Cumings' assertion—made during litigation, not at the time of the arrest—that her aunt knew the children were home alone, Aunt Amanda and the grandmother both appeared to Officer McCorkle to not know that the children had been left alone based upon the questions they asked the children in the presence of Officer McCorkle. Ms. Cumings also had admitted to Officer McCorkle that she had left the children home alone on at least one prior occasion.

While talking on the front porch with the police officers shortly before her arrest, Ms. Cumings explained that this was not something she wanted to do. She explained to Officer McCorkle that she had called her children every twenty to thirty minutes but acknowledged that this did not make it any better. Ms. Cumings acknowledged multiple times that she knew this was not okay, and she explained to the officers her conundrum of "Do I lose my job? Or now I'm in jeopardy of losing my kids." When the other police officer stated that if the house caught fire, the children would not know what to do, Ms. Cumings responded to him and Officer McCorkle, "I know," and then said, "don't think these scenarios don't go through my head because they do."

Given the legal standards for determining whether probable cause exists—which does not rise to the level to support a conviction—and considering the facts known to Officer McCorkle at the time of the arrest, the Court finds it was reasonable for Officer McCorkle to have determined that probable cause existed to arrest Ms. Cumings for neglect of a dependent. The parties agree that if probable cause existed to arrest Ms. Cumings, then her claims are barred and must fail as a matter of law. Indeed, "the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." *Schertz*, 875 F.2d at 582; *Mustafa*, 442 F.3d at 547. Therefore, Officer McCorkle is entitled to summary judgment on Ms. Cumings' claim for false arrest.

The Court briefly notes that Ms. Cumings' state law claim for false arrest similarly fails. A defendant can be held liable for false arrest under state law only if he effectuates an arrest without probable cause. *Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007); *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003). Because probable cause existed in this case, the state law false arrest claim must be dismissed. In addition, any claim for individual liability against Officer McCorkle under Indiana law is not permitted pursuant to Indiana Code § 34-13-3-5(b). "Indiana Code § 34-13-3-5(b) provides that a plaintiff cannot 'sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of employment.'" *Barnhouse v. City of Muncie*, 499 F. Supp. 3d 578, 600 (S.D. Ind. 2020) (quoting *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003)). Ms. Cumings alleged in her Complaint, and the Defendants admitted in their Answer, that Officer McCorkle was acting within the scope of his employment when he arrested Ms. Cumings; thus, any individual capacity claim against him fails.

Ms. Cumings has also asserted that, pursuant to Indiana Code § 34-13-3-5(b), Muncie is responsible for Officer McCorkle's torts. The doctrine of "[r]*espondeat superior* imposes liability, where none would otherwise exist, on an employer for the wrongful acts of his employee which are committed within the scope of employment." *Stropes v. Heritage House Children's Center, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989). There is no dispute that Officer McCorkle was acting within the scope of his employment when he arrested Ms. Cumings. However, the evidence does not show any wrongful or negligent acts committed by Officer McCorkle when he arrested Ms. Cumings. As such, there is no wrongful act by Officer McCorkle that would allow the imposition of liability on Muncie as his employer. Therefore, Muncie also is entitled to summary judgment.

## IV. CONCLUSION

Ms. Taylor was left with a difficult decision when faced with the dilemma of losing her job or leaving her young children home alone. And it is unfortunate that she was arrested. But for the reasons discussed above, probable cause existed for the arrest. Accordingly, Defendants City of Muncie's and Ryan McCorkle's Motion for Summary Judgment ([Filing No. 39](Filing No. 39)) is **GRANTED**. Plaintiff Taylor Cumings' claims are dismissed on summary judgment, the trial and final pretrial conference are hereby **VACATED**. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 9/30/2021

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

| | |
|---|---|
| Jeffrey S. McQuary<br>BROWN TOMPKINS LORY<br>jmcquary@tlawindy.com | Casey C. Stansbury<br>FREEMAN MATHIS & GARY, LLP<br>cstansbury@fmglaw.com |
| Tia J. Combs<br>FREEMAN MATHIS & GARY, LLP<br>tcombs@fmglaw.com | Daenayia Hudson<br>FREEMAN MATHIS & GARY, LLP<br>daenayia.hudson@fmglaw.com |
| Matthew L. Kelsey<br>DEFUR VORAN LLP<br>mkelsey@defur.com | James R. Williams<br>DEFUR VORAN LLP<br>jwilliams@defur.com |